UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, | _____-cv-_____ (    ) |
| Plaintiff, | Related Action: 1:08-cv-07041 (DLC) |
| v. | (ECF CASE) |
| | CLASS ACTION COMPLAINT |
| NOVAGOLD RESOURCES INC., RICK VAN NIEUWENHUYSE, ROBERT J. MACDONALD, DOUGLAS BROWN, CARL GAGNIER, PETER W. HARRIS, GREGORY S. JOHNSON, JOSEPH R. PIEKENBROCK, ELAINE M. SANDERS, DOUGLAS NICHOLSON, GEORGE BRACK, MICHAEL H. HALVORSON, GERALD J. MCCONNELL, COLE L. MCFARLAND, CLYNTON R. NAUMAN, JAMES L. PHILIP, CITIGROUP GLOBAL MARKETS INC., CITIGROUP GLOBAL MARKETS CANADA INC., RBC DOMINION SECURITIES INC., SCOTIA CAPITAL INC., CORMARK SECURITIES INC., MGI SECURITIES INC., HATCH LTD., and BRUCE RUSTAD, | **JURY TRIAL DEMANDED**  |
| Defendants. | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE SECURITIES ACT OF 1933**

**LABATON SUCHAROW LLP**
Joseph A. Fonti  (JF 3201)
jfonti@labaton.com
Benjamin D. Bianco  (BB 5188)
bbianco@labaton.com
140 Broadway
New York, NY 10005
(212) 907-0700

*Counsel for the New Orleans
Employees' Retirement System*

# TABLE OF CONTENTS

I.      NATURE OF THE ACTION ...............................................................................2

II.     JURISDICTION AND VENUE ...........................................................................4

III.    PARTIES ............................................................................................................4

        A.      Plaintiff ...................................................................................................4

        B.      Registrant ................................................................................................5

        C.      NovaGold Individual Defendants ...........................................................5

                1.      Officer Defendants.......................................................................5

                2.      Director Defendants .....................................................................7

        D.      Underwriter Defendants...........................................................................9

        E.      Hatch Defendants...................................................................................11

IV.     PLAINTIFF'S CLASS ACTION ALLEGATIONS..........................................12

V.      SUBSTANTIVE ALLEGATIONS ...................................................................14

        A.      Background ............................................................................................14

                1.      Galore Creek Project..................................................................14

                2.      Hostile Takeover Bid for NovaGold..........................................14

                3.      Hatch Feasibility Study.............................................................15

        B.      The Truth Is Revealed............................................................................18

        C.      Material Misstatements and Omissions in the Registration
                Statement................................................................................................19

COUNT I        AGAINST THE ISSUER, THE DIRECTOR DEFENDANTS,
               MACDONALD, THE UNDERWRITER DEFENDANTS, AND
               THE HATCH DEFENDANTS FOR VIOLATIONS OF SECTION
               11 OF THE SECURITIES ACT ...............................................................23

COUNT II       AGAINST THE ISSUER AND THE UNDERWRITER
               DEFENDANTS FOR VIOLATIONS OF SECTION 12(a)(2) OF
               THE SECURITIES ACT ..........................................................................27

COUNT III   AGAINST THE OFFICER DEFENDANTS FOR VIOLATIONS
              OF  SECTION 15 OF THE SECURITIES ACT ....................................................29

VI.     PRAYER FOR RELIEF ....................................................................................................31

JURY TRIAL DEMANDED..........................................................................................................32

The New Orleans Employees' Retirement System ("New Orleans" or "Plaintiff"), by and through its counsel, brings this class action for violations of Section 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").  Under Federal Rules of Civil Procedure 23(a) and (b)(3), New Orleans brings this action on behalf of itself and all those similarly situated who purchased shares of NovaGold Resources Inc. ("NovaGold" or the "Company") common stock pursuant or traceable to the Registration Statement (as defined below), between April 17, 2007 and November 23, 2007, inclusive, other than defendants and their affiliates (as further defined below, the "Class" and the "Class Period").  Plaintiff alleges the following based upon personal knowledge as to itself and as to other matters upon the investigation by its counsel, which included, among other things, a review of public filings with the United States Securities and Exchange Commission (the "SEC") and with the Provincial and Territorial Canadian Securities Administrators on the System for Electronic Document Analysis and Retrieval ("SEDAR"); press releases; articles in the general and financial press and on news wire services; and witness interviews.

The allegations set forth below arise from defendant NovaGold's secondary offering of 12.5 million shares of common stock (the "Offering") pursuant to its Amended Registration Statement on Form F10/A filed with the SEC on April 16, 2007, which became effective on April 17, 2007, together with the documents incorporated by reference and the base shelf prospectus therein (the "April 16 Registration Statement"), and the Prospectus dated April 19, 2007, filed with the SEC on April 20, 2007, which included two parts:  (i) the prospectus supplement, which describes the terms of the Offering, and (ii) the base shelf prospectus, which was also contained in the April 16 Registration Statement, (the "April 19 Prospectus" and collectively with the April 16 Registration Statement, the "Registration Statement").

## I.    <u>NATURE OF THE ACTION</u>

1.      NovaGold, a Canadian corporation organized under the laws of the Province of Nova Scotia, with its principal place of business in Vancouver, British Columbia, Canada, is an exploration and development-stage precious and base metal mining company.  Since its formation in 1987, NovaGold has pursued a strategy of securing rights to large mineral deposit properties in Alaska and Western Canada.  Not satisfied with its market position as a mining explorer and developer, NovaGold's ambition was to become North America's next high-quality mid-tier gold and copper producer.  Despite its ambition, at the outset of the Class Period, NovaGold had yet to bring a single one of its precious-mineral properties to production.

2.      In the months leading up to the Offering, based on a "final" feasibility study conducted by defendant Hatch Ltd. ("Hatch" and the "Hatch Feasibility Study" or "Study"), NovaGold touted the Galore Creek mine as its best chance to break into the mining production market.  Galore Creek was not merely one of the largest undeveloped copper-gold-silver mines in the world, but, more critically, was purported to be economically viable.

3.      The necessary step toward NovaGold's goal of bringing Galore Creek into production was the funding of the capital costs for the mine.  To that end, the defendants undertook the Offering, which involved the selling of all 12.5 million shares of NovaGold common stock directly to the public and to dealers at the public offering price of US$16.25, resulting in proceeds of US$203,125,000, net of commissions.  As expressly stated in the Registration Statement, the primary purpose of the Offering was to "fund further exploration at, and initial construction of, the Galore Creek project."

4.      As detailed herein, in connection with the Offering, however, the Registration Statement contained materially false and misleading statements and omitted material information that was necessary to make the required statements, in light of the circumstances under which

they were made, not misleading.  Specifically, the Registration Statement stated, *inter alia*, that total capital costs for Galore Creek were approximately US$1.8 billion (or CA$2.2 billion). Based on this figure, the Registration Statement stated that the project was economically viable. Furthermore, the Registration Statement, by virtue of the incorporation by reference therein of the February 20, 2007 Material Change Report, stated that the Hatch Feasibility Study was the "final Feasibility Study for the Galore Creek project, [which] confirmed the economics and mine plan of the project."  The Hatch Feasibility Study was used in connection with the Registration Statement.

5.      Before the market opened on Monday, November 26, 2007, in a conference call with investors and analysts (the "November 26 Conference Call"), NovaGold revealed for the first time that the US$1.8 billion capital cost figure was materially false.  In particular, as detailed below, NovaGold announced that capital costs were in fact as much as US$4 billion, or nearly CA$5 billion.  It was also revealed on the call that in April 2007—at the very same time of the Offering—NovaGold decided to retain another engineering consulting firm to conduct a "new" feasibility study to determine the true capital costs, thereby admitting by its actions that the Hatch Study was neither the "final" study or determinative of the economic viability of the mine.  Based on the "substantial difference in the capital cost," NovaGold decided to suspend construction operations at Galore Creek because the mine was not economically viable.

6.      In reaction to this news, shares of NovaGold common stock, including those shares issued pursuant to the Registration Statement, declined US$10.76, or 53 percent, on trading volume of 29,082,919, more than 24 times the daily average for the Class Period.  On November 21, 2008, the filing date of this suit, NovaGold shares traded at least as low as US$1.38.

3

## II.     JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the

Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o.

8.      This Court has jurisdiction over the subject matter of this action pursuant to

Section 22 of the Securities Act, 15 U.S.C. § 77v, and pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this Judicial District pursuant to Section 22 of the Securities

Act, 15 U.S.C. § 77v, and pursuant to 28 U.S.C. §1391(b).  NovaGold shares are traded on the

American Stock Exchange, which is located in the Southern District of New York.  Many of the

acts charged herein, including the preparation and dissemination of materially false and

misleading information and underwriting and Offering-related activities, occurred in substantial

part in this District.

10.     In connection with the acts, conduct, and other wrongful conduct alleged in this

Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate

commerce, including but not limited to, the United States mails, interstate telephone

communications, and the facilities of the national securities exchanges.

## III.     PARTIES

### A.     Plaintiff

11.     New Orleans is an institutional investor that is also a defined benefit pension plan

established under the laws of the State of Louisiana on July 1, 1947.  New Orleans manages

approximately $400 million in total assets.  New Orleans is supported by joint contributions from

the City of New Orleans, its employee members, and income from investments.  As set forth in

its certification previously filed with the Court, a copy of which is attached hereto as Exhibit A,

New Orleans purchased shares of NovaGold common stock during the Class Period and pursuant

to the Registration Statement and suffered damages proximately caused by the violations of the Securities Act alleged herein.

**B.**     **Registrant**

12.     NovaGold is a corporation organized under the laws of the Province of Nova Scotia, Canada, with its principal place of business located at Suite 2300-200 Granville Street, P.O. Box 24, Vancouver, British Columbia, Canada.  NovaGold is engaged in the business of mineral exploration and development in Alaska and in Western Canada.  NovaGold was the issuer and registrant of the shares registered and offered to the public pursuant to the Registration Statement.

**C.**     **NovaGold Individual Defendants**

**1.**     **Officer Defendants**

13.     Rick Van Nieuwenhuyse ("Nieuwenhuyse") joined NovaGold as President and Chief Operating Officer in January 1998, and has served as Chief Executive Officer since May, 1999.  Nieuwenhuyse has over 25 years of experience in the natural resource sector, managing projects from mineral exploration and discovery through to advanced feasibility studies and production.  Nieuwenhuyse holds a Candidature degree in Science from the Universite de Louvain, Belgium, and a Masters of Science degree in geology from the University of Arizona. At the time the Registration Statement became effective, Nieuwenhuyse was a director of NovaGold.

14.     Robert J. MacDonald ("MacDonald") has served as NovaGold's Senior Vice President, Chief Financial Officer, and Secretary since January 2003.  MacDonald has over 20 years of experience in the mining industry, and directly involved in the operation or development of numerous mines in North and South America.  In particular, MacDonald has been involved in the completion of over thirty mining financings.  MacDonald holds a Bachelor

and Masters degree in engineering from Oxford University and is a chartered accountant. MacDonald signed the Registration Statement.

15.     Douglas Brown ("Brown") was, at the time the Registration Statement became effective, NovaGold's Vice President of Business Development.  Brown joined NovaGold having spent the previous 15 years as a senior executive in the mining industry.  From May 2007 through January 2008, Brown was the General Manager of Galore Creek and President of the Galore Creek Mining Corporation.  Brown holds a Bachelor of Science degree in Mining Engineering and a Master of Science degree in Mineral Economics from the Colorado School of Mines.

16.     Carl Gagnier ("Gagnier") was, at the time the Registration Statement became effective, NovaGold's Executive Vice President and General Manager of Galore Creek.  Gagnier joined NovaGold in January 2005, having spent 15 years as a senior executive in the mining industry.  At the time the Registration Statement became effective, Gagnier was responsible for engineering, environmental, and government relations with respect to Galore Creek.  Gagnier holds a Bachelor of Science degree in Metallurgical Engineering from Queen's University.

17.     Peter W. Harris ("Harris") was, at the time the Registration Statement became effective, Senior Vice President and Chief Operating Officer of NovaGold.  He was appointed Senior Vice President and Chief Operating Officer in 2005.  Harris has over 30 years experience in mine design, development, and operations experience.  He has been involved with, and responsible for, the development and operation of mines all over the world.

18.     Gregory S. Johnson ("Johnson") was, at the time the Registration Statement became effective, NovaGold's Vice President of Corporate Communications and Strategic

Development since 1998.  Johnson is responsible for marketing and communications activities of NovaGold and is involved in developing strategic growth opportunities, including Galore Creek.

19.     Joseph R. Piekenbrock ("Piekenbrock") was, at the time the Registration Statement became effective, NovaGold's Vice President of Exploration since in June 2003. With over 25 years of experience in the minerals exploration and development sector, he has managed exploration from discovery through advanced acquisitions.  Piekenbrock holds a Bachelor of Arts degree in geology from the University of Colorado and a Master of Science degree in geology from the University of Arizona.

20.     Elaine M. Sanders ("Sanders") was, at the time the Registration Statement became effective, Novagold's Controller in March 2003, and became Vice President of Finance in October 2006.  Sanders has over 14 years of experience in auditing, financing, and accounting for public and private companies.  Sanders is a chartered accountant and a certified public accountant, and holds a Bachelor of Commerce degree from the University of Alberta.

21.     Douglas Nicholson ("Nicholson") was, at the time the Registration Statement became effective, Vice President of NovaGold Alaska; General Manager of Alaska Gold Co.; and President of Donlin Creek LLC.  Nicholson has over 18 years of mine development and operation experience and has a Bachelor of Science degree in mine engineering from the University of Alaska.

22.     Nieuwenhuyse, MacDonald, Brown, Gagnier, Harris, Johnson, Piekenbrock, Sanders, and Nicholson are herein collectively referred to as the "Officer Defendants."

## 2.     Director Defendants

23.     George Brack ("Brack") was a director of NovaGold at the time the Registration Statement became effective, and signed the Registration Statement.  At the time the Registration Statement became effective, Brack was Managing Director and Industry Head of the Mining

Sector for Scotia Capital.  Brack's career in corporate finance has been focused on the world-wide identification, evaluation, and execution of strategic mergers and acquisitions in the mining industry.

24.      Michael H. Halvorson ("Halvorson") was a director of NovaGold at the time the Registration Statement became effective, and signed the Registration Statement.  At the time the Registration Statement became effective, Halvorson was the President of Halcorp Capital Ltd., a position he held since September 1981, and was also a director of Strathmore Minerals Corp., Gentry Resources Ltd., Esperanza Silver Corporation, Orezone Resources Inc., Radiant Resources Inc. and Pediment Exploration Ltd. Past directorships include Western Silver Inc. and Viceroy Exploration Ltd.

25.      Gerald J. McConnell ("McConnell") founded NovaGold in 1984.  He was a director of NovaGold at the time the Registration Statement became effective, and signed the Registration Statement.  Also at that time, McConnell was the Chairman, President and Chief Executive Officer of Etruscan Resources Inc., a junior natural resource company.

26.      Cole L. McFarland ("McFarland") was a director of NovaGold at the time the Registration Statement became effective, and signed the Registration Statement.  At the time the Registration Statement became effective, McFarland was the principal of McFarland & Associates and a veteran of the mining industry with over 40 years of experience in the development and operation of mineral properties in the United States and the Philippines, with extensive experience in Alaska.

27.      Clynton R. Nauman ("Nauman") was director of NovaGold at the time the Registration Statement became effective, and signed the Registration Statement.  At the time the Registration Statement became effective, Nauman was the Chief Executive Officer of Alexco

Resource Corp., Asset Liability Management Group ULC.  Nauman has 25 years of diversified experience in the mining industry ranging from exploration and business development to operations and business management in the precious metals, base metals and coal sectors.

28.     James L. Philip ("Philip") was director of NovaGold at the time the Registration Statement became effective, and signed the Registration Statement.  At the time the Registration Statement became effective, Philip was the President of Clan Chatton Finance Ltd., a private investment holding company.  Philip is a chartered accountant and has over 25 years of public accounting experience, servicing mainly companies listed on Canadian and United States stock exchanges.

29.     Together with defendant Nieuwenhuyse, defendants Brack, Halvorson, McConnell, McFarland, Nauman, and Philip are herein collectively referred to as the "Director Defendants."  NovaGold, the Officer Defendants and the Director Defendants are referred to herein collectively as the "NovaGold Defendants."

### D.     <u>Underwriter Defendants</u>

30.     Citigroup Global Markets Inc. ("Citigroup") is a corporation organized under the laws of the State of New York, with its principle place of business located at 388 Greenwich Street, New York, NY 10013.  Citigroup is the brokerage and securities arm of Citigroup Inc. and provides brokerage, investment banking, and asset management services to businesses, governments, and individuals.  Citigroup was an underwriter of the Offering, as admitted in the Registration Statement, and agreed to purchase and distribute 5 million shares of NovaGold common stock pursuant to the Registration Statement.  Citigroup was also the joint book running manager for the Offering and joint representative for the underwriters.

31.     Citigroup Global Markets Canada Inc. ("Citigroup Canada") is a corporation organized under the laws of the province of Ontario, Canada, with its principal place of business

located at 123 Front Street West, Suite 1100, Toronto, Ontario, Canada.  Citigroup Canada, an affiliate of Citigroup, was an underwriter of the Offering, as admitted in the Registration Statement, and agreed in the Underwriting Agreement to "use reasonable efforts to effect sales in Canada" of NovaGold common stock, pursuant to the Registration Statement.  Any shares sold to Canadian purchasers through Citigroup Canada would be distributed from Citigroup's purchase allotment.  For these underwriting services, Citigroup Canada was to be paid an amount to be mutually agreed upon with Citigroup, but which was not to exceed the Underwriting Commission set forth in the Underwriting Agreement.

32.     RBC Dominion Securities Inc. ("RBC") is a corporation organized under the laws of the province of British Columbia, Canada, with its principal place of business located at 666 Burrard Street, Suite 2100 Park Place, Vancouver, British Columbia, Canada.  RBC is a leading debt and equity underwriter specializing in, *inter alia*, the mining industry.  RBC was an underwriter of the Offering, as admitted in the Registration Statement, and agreed to purchase and distribute 5 million shares of NovaGold common stock pursuant to the Registration Statement.  RBC was also the joint book running manager for the Offering and joint representative for the underwriters, along with Citigroup.

33.     Scotia Capital Inc. ("Scotia") is a corporation organized under the laws of the province of Ontario, Canada, with its principal place of business located at Scotia Plaza, 40 King Street West, Toronto, Ontario, Canada.  Scotia is a full-service corporate and investment banking company specializing in, *inter alia*, the mining industry.  Scotia was an underwriter of the Offering, as admitted in the Registration Statement, and agreed to purchase and distribute 1.25 million shares of NovaGold common stock pursuant to the Registration Statement.

34. Cormark Securities Inc. ("Cormark") is a corporation organized under the laws of the province of Ontario, Canada, with its principle place of business located at Royal Bank Plaza, South Tower, 200 Bay Street, Suite 2800, Toronto, Ontario, Canada. Cormark is a leading independent investment dealer specializing in, *inter alia*, the mining industry. Cormark was an underwriter of the Offering, as admitted in the Registration Statement, and agreed to purchase and distribute 625,000 shares of NovaGold common stock pursuant to the Registration Statement.

35. MGI Securities Inc. ("MGI") is a corporation organized under the laws of the province of Ontario, Canada, with its principal place of business located at 26 Wellington Street East, Suite 900, Toronto, Ontario, Canada. MGI is a full-service corporate and investment banking company specializing in, *inter alia*, the mining industry. MGI was an underwriter of the Offering, as admitted in the Registration Statement, and agreed to purchase and distribute 625,000 shares of NovaGold common stock pursuant to the Registration Statement.

36. Citigroup, Citigroup Canada, RBC, Scotia, Cormark, and MGI are herein collectively referred to as the "Underwriter Defendants."

**E.** **Hatch Defendants**

37. Hatch Ltd. ("Hatch") is a corporation organized under the laws of the province of Ontario, Canada, with its Global Corporate Office located at 2800 Speakman Drive, Mississauga, Ontario, Canada. Hatch supplies process and business consulting, information technology, engineering, and project and construction management to the mining, metallurgical, manufacturing, energy, and infrastructure industries. Hatch authored the Hatch Feasibility Study, which is specifically referenced at pages 10-16 of the Registration Statement and used in connection with the Registration Statement. Specifically, the Registration Statement, at pages 10-11, states that in "October 2006, Hatch Ltd., an independent engineering services company,

11

together with a number of specialized consultants, completed a feasibility study (the "Galore Creek Feasibility Study") [*i.e.*, previously defined herein as the Hatch Feasibility Study] for the Galore Creek project.  This study confirms the economic viability of a conventional open-pit mining operation using long-term metals prices and provides the basis for the Company's first proven and probable reserves for copper, gold and silver."  In addition, Hatch consented in Exhibit 5.3 of the Registration Statement, to "references to [Hatch's] name and to the involvement of [Hatch] in the preparation of the Galore Creek Project Feasibility Study (the "Study") in the Registration Statement, and to the inclusion and incorporation by reference of information derived from the Study in the Registration Statement."

38.    Bruce Rustad ("Rustad"), a professional engineer working for Hatch at the time of the Hatch Feasibility Study, had primary responsibility over the execution and completion of the Study.  The Registration Statement, at page 11, states that the "Galore Creek Feasibility Study was completed under [Rustad's] coordination."  In addition, Rustad consented (*see* Exhibit 5.9 of the Registration Statement) to "references to [his] name and to [his] involvement in the preparation of the Galore Creek Project Feasibility Study (the "Study") in the Registration Statement, and to the inclusion and incorporation by reference of information derived from the Study in the Registration Statement.  Hatch and Rustad are herein collectively referred to as the "Hatch Defendants."

## IV.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased NovaGold common stock pursuant or traceable to the Registration Statement, during the Class Period (*i.e.*, between April 17, 2007 and November 23, 2007, inclusive) and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the corporate defendants,

members of the immediate families of any excluded person, the legal representatives, heirs, successors or assigns of any excluded person, and any entity in which defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  At least 12.5 million shares were issued and sold pursuant to the Registration Statement.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands, if not tens of thousands, of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by NovaGold and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

13

(b)     whether the Registration Statement contained materially false statements or omissions of fact; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background

#### 1.     Galore Creek Project

45.     Galore Creek, located in a remote, mountainous area of northwestern British Columbia, Canada, was an undeveloped site containing large copper-gold-silver mineral deposits.  Galore Creek represents one of the largest untapped copper-gold-silver properties in the world, purportedly with one of the lowest cash costs in the industry.  If this mine proved economically viable, NovaGold intended to use it to launch the Company from an exploration and development firm to an actual producer of metals.  To this end, shortly after obtaining exploration rights over Galore Creek in 2003, NovaGold promptly commissioned Hatch to conduct a feasibility study on the property, as detailed below.

#### 2.     Hostile Takeover Bid for NovaGold

46.     On or about July 24, 2006, non-party Barrick Gold Corp. ("Barrick") made an unsolicited offer to purchase all of the common shares of NovaGold for US$14.50 per share.

Barrick, a Canadian corporation organized under the laws of the Province of Ontario, is one of the world's largest gold producers with a portfolio of 27 operating mines, advanced exploration and development projects across five continents, and large land positions on the most prolific and prospective mineral fields.

47.     On news of Barrick Gold's hostile takeover bid, the price of NovaGold shares soared from a closing price of US$11.67 per share on July 24, 2006, to close at US$16.17 per share on July 25, 2006, on trading volume of over 9 million shares, or nearly 8 times the average daily volume during the Class Period.

48.     On August 4, 2006, Barrick raised its offering price to US$16 per share.  But by mid-September, shares of NovaGold stock had retreated to under Barrick's US$16 offering price, after reaching a high of nearly US$18 on September 1.

49.     On October 24, 2006, Barrick issued a press release stating that US$16 per share for NovaGold common stock would be its "best and final" offer.  The very next day, on October 25—six days before it was complete—the NovaGold Defendants announced the results of the Hatch Feasibility Study, which purportedly "confirmed" the economic viability of Galore Creek.  Touting these conclusions, NovaGold told its shareholders they should vote to reject Barrick's hostile bid because it "falls well short of reflecting the value inherent in NovaGold, its world-class portfolio of gold, silver and copper projects and potential growth opportunities."

50.     On December 6, 2006, Barrick's US$16 offer for NovaGold common shares expired without shareholders tendering a controlling interest in NovaGold.

### 3.     Hatch Feasibility Study

51.     The Hatch Feasibility Study, commissioned in 2003, was completed on October 31, 2006, "under the direction" of Rustad.  The Study purportedly analyzed, *inter alia*, Galore Creek's geology and resources, mine capital costs, operating costs, and overall logistics

and project economics in order to determine whether a mine at Galore Creek would be economically viable.

52.     A primary focus of the Study was the logistics behind the storage of mine "tailings" and "waste rock" from the anticipated "open-pit" mine operations.  Tailings are simply the materials left over after the process of separating the valuable minerals from the worthless portion of the ore (*i.e.*, ore is the rock that contains minerals such as gemstones and precious metals that can be extracted through mining operations and an ore body refers to the collection of ore at a particular mining location.)  Waste rock is the portion of the mined area that does not contain valuable minerals.

53.     Due to the nature of the mine at Galore Creek, the handling of the tailings and waste rock was the most significant engineering challenge and capital expenditure.  Galore Creek was to be an "open-pit" mine, meaning that because the ore body was located relatively close to the surface but spread out over a large area, miners would essentially dig out a vast pit beginning with the hundreds of feet of waste rock that sits above the ore body.  Unlike underground mining, where narrow, targeted tunnels are used to reach the ore body, open-pit mining requires the excavation of every inch of waste rock above the ore body before cultivation of the metals can begin.

54.     Once extracted from the earth, the tailings and waste rock must be permanently stored.  Given the massive quantities of material, the Hatch Feasibility Study provided for the waste rock and tailings to be deposited in Galore Creek Valley between two peaks, and the construction of a single "tailings dam" that would permanently hold back the material in the valley.

55.     This was no small feat.  Galore Creek was to produce an estimated 540 million tons of ore and approximately 840 million tons of waste rock.  Ultimately, this material would fill nearly 4 square kilometers, and rise over 200 meters, or over 65 stories, high.  The waste rock and tailings would span a width of at least 1.5 kilometers, or nearly a mile.  The tailings dam itself was to stand 275 meters, or approximately 90 stories high, one of the tallest in the world.

56.     In addition to the tailings dam, but related thereto, another primary focus of concern was the "management" of surface waters in the Galore Creek Valley.  In order for the mine to operate, the water from the Galore Creek had to be diverted around the mine site and tailings dam, creating "a significant issue for both construction and operations."  The "diversion channels" would be constructed to direct as much fresh water from the tailings dam as practical, carrying it past the mine site, and discharging it back into the Galore Creek river bed approximately 7.5 miles downstream of the tailings dam.  Moreover, before mining operations could cultivate the first ounce of precious metal from the ground, the "undeveloped" Galore Creek property needed to be turned into a functioning mine.

57.     In view of their magnitude, tailings and waste rock generated from the mine were crucial elements of the capital costs and economic viability of the mine.  As set forth in the Registration Statement, with the tailings and waste rock management issues detailed above, the capital costs for the mine were stated to be roughly US$1.8 billion, with the mine becoming fully operational in 2012.  Based substantially on these capital cost figures, the Galore Creek project was deemed "economically viable" and valued at a 10.6 percent rate of return on investment for NovaGold over the life on the mine.

B.    **The Truth Is Revealed**

58.     On November 26, 2007, NovaGold, along with its joint venture partner Teck

Cominco ("Teck"),[1] hosted the November 26 Conference Call and disclosed that mining

operations at Galore Creek had been suspended indefinitely due to the true capital costs.

According to CEO Nieuwenhuyse, at the exact same time the Registration Statement became

effective—and the statements therein that the Hatch Study was the "final" feasibility study—

NovaGold decided to retain AMEC Americas Limited ("AMEC"), another engineering and

consulting company, to undertake a "new" feasibility study and to conduct a "more detailed

engineering review" of the economic viability of Galore Creek.

59.     As a result of AMEC's work, the true capital costs of at least US$4 billion—an

increase of approximately 125 percent from the amounts in the Registration Statement—was

revealed.  Specifically, the tailings and waste rock related issues—those most anticipated and

critical to the project—were the most significantly misstated.  Indeed, during the November 26

Conference Call, Nieuwenhuyse admitted that the "lion's share of the increases" were due to the

work necessary to complete the tailings dam and the water diversion structures that were already

in the plans.

60.     As Brown admitted, it was not until the NovaGold Defendants "began to study the

construction of the tailings dam and some of the large water diversion structures in more detail,

[that they] recognized that those activities need to be sequenced in a highly complex fashion."

Brown went on to admit that where the Hatch Feasibility Study stated that the tailings dam and

water diversion would constitute "roughly 20%, 25%" of the capital cost budget, the true cost

was "at least one-third if not 45% of the overall cost of the project right now."

---

[1] In late-May 2007, NovaGold and Teck, a diversified mining and metals company, entered into a joint
venture with respect to the construction and operation of Galore Creek.

61.     Critically, the decision to suspend operations at Galore Creek was based entirely upon the true capital costs of the project, and not on any alteration to the Galore Creek construction plan.  In fact, the scope of the project "***did not change***."  Nieuwenhuyse made this clear:

> [The] scope [of the project] did not change.  It was more in looking at a more detailed engineered [sic] review of how that work was going to get done.  It was in that process that it was identified that the work would take longer, require more people and that is what has led to the significant increase in the cost.

62.     NovaGold and Teck "reached this decision after extensive review and the realization that capital costs have increased significantly."  The companies concluded that "when you add $2 billion or more to the capital cost," you need to reevaluate the economic viability of a project, and we "think the most important thing is for us to minimize expenses right now while we look at alternative ways to develop it."

63.     According to NovaGold's website, AMEC's "new feasibility study, scheduled for 2009, will update cost estimates for the project and may allow for the recommencement of construction."

### C.     Material Misstatements and Omissions in the Registration Statement

64.     As detailed herein, the Registration Statement in its entirety, and specifically the sections set forth below, was materially false and misleading and omitted to state material facts necessary to make it not misleading.

65.     More specifically, at page 12 and elsewhere, the Registration Statement stated that the capital cost for the Galore Creek mine was approximately US$1.8 billion.  Furthermore, the Registration Statement included the following under the heading "Summary Financial Results":

## Galore Creek — Summary Financial Results

| | Units | Base Case |
|---|---|---|
| **Mine Basis** | | |
| Mine Life | Years | 22 |
| Ore Tonnage milled | M tonnes | 522 |
| Strip Ratio (waste to ore) | | 1.64 |
| Mill throughput (nominal) | Tonnes per day | 65,000 |
| Total capital cost (mine facilities + infrastructure) (1) | US $(millions) | 1,805 |
| Sustaining capital cost (1) | US $(millions) | 122 |
| | | |
| **Unit Operating Costs** | | |
| Mining cost per tonne mined (1) | US$/t | 1.22 |
| Milling / Process cost per tonne ore (1) | US$/t | 3.05 |
| G&A cost per tonne ore (1) | US$/t | 0.80 |
| Total Cash Cost First 5 Years (net of precious metal credits) (3) | US$/lb Cu | 0.38 |
| Total Cash Cost First 5 Years (net of copper and silver credits) (3) | US$/oz Au | (889) |
| Total Cash Cost Life of Mine (net of precious metal credits) (3) | US$/lb Cu | 0.62 |
| Total Cash Cost Life of Mine (net of copper and silver credits) (3) | US$/oz Au | (874) |
| Total Co-product Cost First 5 Years (copper) | US$/lb Cu | 0.67 |
| Total Co-product Cost First 5 Years (gold) | US$/oz Au | 150 |
| Total Co-product Cost Life of Mine (copper) | US$/lb Cu | 0.82 |
| Total Co-product Cost Life of Mine (gold) | US$/oz Au | 200 |

---

(1) Converted from Canadian dollars to U.S. dollars at the base case $1.00 = US$0.81 long-term exchange rate.
(2) Average metal price based on N. Seldon Marketing Report with long-term staggered metal prices.
(3) Cash cost is not a term recognized by Canadian GAAP or U.S. GAAP and includes mining costs, processing costs (including transportation and refining), and local production taxes and royalties but excludes end-of-mine reclamation accruals.

66.     These figures set forth in the Registration Statement, and recreated above, were materially false and misleading when made, and omitted to state material information required to make the statements therein not misleading, because the true capital cost to build Galore Creek was at least US$4 billion, or more than double the amount provided in the Registration Statement.

67.     The Registration Statement also falsely stated the nature of the Hatch Feasibility Study and the fact that it "confirmed" the economic viability of the mine operations:

> In October 2006, Hatch Ltd., an independent engineering services company, together with a number of specialized consultants,

> ***completed*** a feasibility study (the "Galore Creek Feasibility
> Study") for the Galore Creek project.  This study ***confirms*** the
> economic viability of a conventional open-pit mining operation
> using long-term metals prices and provides the basis for the
> Company's first proven and probable reserves for copper, gold and
> silver.
>
> A financial analysis using the base case parameters set out below
> indicates that the Galore Creek project is expected to generate an
> after-tax internal rate of return of approximately 10.6% and have
> an undiscounted after-tax net present value of US$1.74 billion.

(Emphasis added.)

68.     Furthermore, the Registration Statement incorporated by reference several

additional documents, specifically:

     (a)     annual information form of the Company for the year ended November 30,

2006, dated February 27, 2007;

     (b)     audited comparative consolidated financial statements of the Company for

the years ended November 30, 2006 and 2005 together with the notes thereto and the

auditors' report thereon, including management's discussion and analysis for the year

ended November 30, 2006;

     (c)     management information circular of the Company dated April 28, 2006

prepared in connection with the Company's annual and special meeting of shareholders

held on May 31, 2006;

     (d)     material change report, dated December 15, 2006, announcing the

approval of a new Shareholder Rights Plan, to take effect December 7, 2006, the day

following the expiry of Barrick's takeover bid; and

     (e)     material change report, dated February 20, 2007.

69.     These documents incorporated by reference into the Registration Statement were

materially false and misleading and omitted to state material facts necessary to make them not

misleading.  For instance, the February 20, 2007 Change Report, which was dated February 9,

2007, stated that the Hatch Study was the "final" feasibility study and that the mine was

economically viable:

> A *final* Feasibility Study for the Galore Creek project, completed
> in October 2006, provided substantial Proven and Probable
> Reserves for NovaGold and confirmed the economics and mine
> plan of the project.

(Emphasis added.)

70. Under the heading "Use of Proceeds," the Registration Statement stated:

> The net proceeds of any offering of Securities under a Prospectus
> Supplement will be used to fund further exploration at, and initial
> construction of, the Galore Creek project, to fund general
> exploration and development on the Company's other projects and
> for general corporate purposes.

This statement was materially false and misleading because it did not disclose that the proceeds

were in fact being used to conduct a new feasibility study to determine the true capital cost for

the mine and its economic viability.

71. The Registration Statement, at pages 31-44, lists a multitude of risk factors that

may impact negatively upon NovaGold's business, operations, and financial condition.  Among

the risks delineated in the Registration Statement was that "[a]ctual capital costs, operating costs,

production and economic returns may differ significantly from those NovaGold has anticipated

and there are no assurances that any future development activities will result in profitable mining

operations."  In this regard, the Registration Statement specifically states:

> Capital and operating costs, production and economic returns, and
> other estimates contained in the Galore Creek feasibility study or
> other feasibility studies or economic assessments, *if prepared*, may
> differ significantly from those anticipated by NovaGold's current
> studies and estimates, and there can be no assurance that the
> Company's actual capital and operating costs will not be higher
> than currently anticipated.

(Emphasis added).  The risk factors identified in the Registration Statements were materially false and misleading and omitted to state material facts necessary to make them not misleading.

72.     Pursuant to SEC Rule 408, 17 C.F.R. § 230.408, the Registration Statement shall include, "in addition to the information expressly required to be included in a registration statement, … such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made not misleading."  As detailed herein, the Registration Statement in its entirety, and as set forth specifically above, was materially false and misleading and omitted to state material facts to make it not misleading.  In addition to the reasons set forth herein, the Registration Statement was materially false and misleading when it became effective, because, but not limited to, the fact it (i) did not disclose the true capital cost of the Galore Creek project; (ii) stated that the project was economically viable; (iii) stated that the Hatch Report was the "final" feasibility study that "confirmed" the economic viability of the project; (iv) stated that the proceeds for the Offering were to be used for construction and development of the Galore Creek mine; and (v) failed to disclose that at the time of the Offering, the NovaGold Defendants had decided to retain AMEC to conduct a "new" study to determine the true capital costs for the project.

## COUNT I

### AGAINST THE ISSUER, THE DIRECTOR DEFENDANTS, MACDONALD, THE UNDERWRITER DEFENDANTS, AND THE HATCH DEFENDANTS FOR VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT

73.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.  For purposes of this Count, Plaintiff asserts only strict liability and negligence claims and expressly disclaims any claim of fraud or intentional misconduct.

74.     This Count is brought pursuant to Section 11 of the Securities Act against defendant NovaGold; Director Defendants Brack, Halvorson, McConnell, McFarland, Nauman, Nieuwenhuyse, and Philip; Defendant MacDonald; Underwriter Defendants Citigroup, Citigroup Canada, RBC, Scotia, Cormark, and MGI; and Hatch Defendants Hatch Ltd. and Rustad.

75.     This claim is brought on behalf of Plaintiff and other members of the Class who, during the Class Period, purchased or otherwise acquired NovaGold common stock issued pursuant or traceable to the Registration Statement.

76.     Defendant NovaGold was the registrant and issuer of the NovaGold common stock pursuant to the Registration Statement.

77.     Defendants Brack, Halvorson, MacDonald, McConnell, McFarland, Nauman, Nieuwenhuyse, and Philip each signed the Registration Statement.

78.     At the time the Registration Statement became effective, defendants Brack, Halvorson, McConnell, McFarland, Nauman, Nieuwenhuyse, and Philip were each directors of NovaGold.

79.     Defendants Citigroup, Citigroup Canada, RBC, Scotia, Cormark, and MGI were statutory underwriters of the Offering of NovaGold common stock as admitted in the Registration Statement.

80.     Defendants Hatch and Rustad are named with consent, in the Registration Statement and prepared the Hatch Feasibility Study, which was used in connection with the Registration Statement.

81.     As set forth above, the Registration Statement contained untrue statements of material fact, including the economic viability of and capital costs associated with Galore Creek.

In addition, the Registration Statement omitted to state other facts required to be stated therein or necessary to make the statements therein not misleading.

82.     Defendant NovaGold, as the issuer, is strictly liable for the material misstatements and omissions contained in the Registration Statement.

83.     The other defendants named in this Count owed to Plaintiff and the Class the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement, to ensure that the statements contained or incorporated by reference therein were true and that there was no omission to state a material fact required to be stated therein in order to make the statements contained therein not misleading.

84.     These defendants did not make a reasonable and diligent investigation of the statements contained or incorporated by reference in the Registration Statement, and did not possess reasonable grounds for believing that the Registration Statement did not contain an untrue statement or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

85.     The Underwriter Defendants named in this Count did not conduct a reasonable investigation of the statements contained in and incorporated by reference in the Registration Statement and did not possess reasonable grounds for believing that the statements contained therein were true and not materially misstated.  In particular, the Underwriter Defendants did not conduct a reasonable investigation into the accuracy of the statements regarding the economic viability of and capital costs associated with Galore Creek.  The Underwriter Defendants could not simply rely on the work performed or statements made by NovaGold or the Hatch Defendants because the investing public relies on the underwriters to obtain and verify relevant information and then make sure that important facts are accurately disclosed.  Thus, the

Underwriter Defendants must conduct their own, independent and reasonable investigation into the accuracy of the Company's statements and conclusions, and they were negligent in failing to do so sufficiently in connection with the Offering.

86.     Similarly, the Director Defendants named in this Count were negligent in failing to conduct a reasonable investigation of the statements contained in the Registration Statement and did not possess reasonable grounds for believing that the Registration Statement was free of untrue statements of material fact or omitted to state material facts required to be stated therein to make the statements in the Registration Statement not misleading.

87.     Defendants Hatch and Rustad consented to inclusion of their names in the Registration Statement, and to the use of the Hatch Feasibility Study in connection with the Registration Statement.  Defendants Hatch and Rustad failed to perform their duties regarding the preparation of the Hatch Feasibility Study.  The Hatch Defendants did not make a reasonable and diligent investigation of the statements used in connection with the Registration Statement. The Hatch Defendants did not possess reasonable grounds for believing that the Registration Statement did not contain any untrue statement or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

88.     Plaintiff and members of the Class purchased NovaGold common stock issued pursuant or traceable to the Registration Statement and were damaged thereby.

89.     Plaintiff and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the Registration Statement when they purchased or acquired their securities.  Less than one year has elapsed between the time they discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought.  Less than three years have

elapsed between the time that the securities upon which this Count is brought were bona fide

offered to the public and the time this action was commenced.

90.     By reason of the foregoing, the defendants named in this Count are liable to

Plaintiff and members of the Class for violations of Section 11 of the Securities Act.

## COUNT II

### AGAINST THE ISSUER AND THE UNDERWRITER DEFENDANTS FOR VIOLATIONS OF SECTION 12(a)(2) OF THE SECURITIES ACT

91.     Plaintiff repeats and realleges each and every allegation above as if fully set forth

herein.  For purposes of this Count, Plaintiff asserts only strict liability and negligence claims

and expressly disclaims any claim of fraud or intentional misconduct.

92.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act against

Defendant NovaGold; and Underwriter Defendants Citigroup, Citigroup Canada, RBC, Scotia,

Cormark, and MGI.

93.     This claim is brought on behalf of Plaintiff and other members of the Class who,

during the Class Period, purchased or otherwise acquired NovaGold common stock issued

pursuant to the April 19 Prospectus.

94.     Defendant NovaGold solicited the purchase of its common stock by the use of

means or instruments of transportation or communication in interstate commerce or of the mails

and by means of the April 19 Prospectus.  NovaGold solicited the purchase of shares of its

common stock pursuant to the April 19 Prospectus for its own financial interest.

95.     The Underwriter Defendants named in this Count are sellers within the meaning

of the Securities Act because they (a) transferred title to Plaintiff and other purchasers of

NovaGold common stock; (b) transferred title of NovaGold common stock to other purchasers

and/or broker-dealers that sold the transferred NovaGold common stock; and/or (c) solicited the

purchase of NovaGold common stock by Plaintiff and other members of the Class, motivated at least in part by a desire to serve their own financial interests and the interests of defendant NovaGold, including but not limited to commissions on their own sales of NovaGold common stock and separate commissions on the sale of NovaGold common stock by non-underwriter broker-dealers.

96.     As alleged herein, the April 19 Prospectus contained untrue statements of material fact, including, but not limited to, statements regarding the economic viability of and capital costs associated with Galore Creek.  In addition, the April 19 Prospectus omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading, including, but not limited to, the fact that NovaGold decided, at the time the April 19 Prospectus was filed, to retain AMEC to conduct a "more detailed" feasibility study of Galore Creek.  The facts misstated and omitted would have been material to a reasonable person reviewing the April 19 Prospectus.

97.     Defendant NovaGold and the Underwriter Defendants named in this Count owed to Plaintiff and the Class the duty to make a reasonable and diligent investigation of the statements contained in the April 19 Prospectus, to ensure that the statements contained or incorporated by reference therein were true and that there was no omission to state a material fact required to be stated therein in order to make the statements contained therein not misleading.

98.     Defendant NovaGold and the Underwriter Defendants named in this Count did not make a reasonable and diligent investigation of the statements contained or incorporated by reference in the April 19 Prospectus and did not possess reasonable grounds for believing that the April 19 Prospectus did not contain an untrue statement of material fact or omit to state a

material fact required to be stated therein or necessary to make the statements therein not misleading.

99.     Plaintiff and members of the Class purchased NovaGold common stock pursuant to the April 19 Prospectus and were damaged thereby.

100.     Plaintiff and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the April 19 Prospectus when they purchased or acquired the securities.  Less than one year has elapsed between the time they discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought.  Less than three years have elapsed between the time that the securities upon which this Count is brought were bona fide offered to the public and the time this action was commenced.

101.     By reason of the foregoing, defendant NovaGold and the Underwriter Defendants named in this Count are liable to Plaintiff and members of the Class for violations of Section 12(a)(2) of the Securities Act.  Plaintiff and Class members hereby tender their securities to their respective sellers and seek rescission of their purchases to the extent that they continue to own such securities.  Class members who have sold their NovaGold common stock seek damages to the extent permitted by law.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS FOR VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT

102.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.  For purposes of this Count, Plaintiff asserts only strict liability and negligence claims and expressly disclaims any claim of fraud or intentional misconduct.

103.     This Count is brought pursuant to Section 15 of the Securities Act against Officer defendants Nieuwenhuyse, MacDonald, Brown, Gagnier, Harris, Johnson, Piekenbrock, Sanders, and Nicholson.

104.     NovaGold violated Section 11 of the Securities Act by issuing the Registration Statement which contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary in order to make the statements therein not misleading. The facts misstated and omitted would have been material to a reasonable person reviewing the Registration Statement.

105.     NovaGold violated Section 12(a)(2) of the Securities Act by soliciting the purchase of NovaGold common stock by means of the April 19 Prospectus which contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary in order to make the statements therein not misleading.  The facts misstated and omitted would have been material to a reasonable person reviewing the April 19 Prospectus.

106.     The Officer Defendants were controlling persons of NovaGold when the Registration Statement became effective because of their senior executive positions with NovaGold and their direct involvement in NovaGold's day-to-day operations, including its mining operations at Galore Creek.

107.     By virtue of the foregoing, the Officer Defendants each had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of NovaGold, including the content of the Registration Statement.

108.     The Officer Defendants acted negligently and without reasonable care regarding the accuracy of the information contained and incorporated by reference in the Registration

Statement and lacked reasonable grounds to believe that such information was accurate and complete in all material respects.

109.    Plaintiff and members of the Class purchased NovaGold common stock pursuant or traceable to the Registration Statement and/or pursuant to the April 19 Prospectus for this Offering, and were damaged thereby.

110.    Plaintiff and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the Registration Statement when they purchased or acquired the securities.

111.    By reason of the foregoing, the Officer Defendants are liable to Plaintiff and members of the Class for violations of Section 15 of the Securities Act.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff , on behalf of itself and the other members of the Class, pray for judgment as follows:

a.    declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.    awarding Plaintiff and the other members of the Class rescissory and compensatory damages as a result of the wrongs alleged in Count II of the Complaint;

c.    awarding Plaintiff and the other members of the Class compensatory damages as a result of the wrongs alleged in Counts I and III of the Complaint;

d.    awarding Plaintiff and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

e.    awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  November 21, 2008

LABATON SUCHAROW LLP

By: _____
Joseph A. Fonti  (JF 3201)
jfonti@labaton.com
Benjamin D. Bianco  (BB 5188)
bbianco@labaton.com
140 Broadway
New York, NY 10005
Telephone:   (212) 907-0700
Facsimile:   (212) 818-0477

*Counsel for the New Orleans*
*Employees' Retirement System*

## CERTIFICATION

I, Jerome Davis, Chairman of the New Orleans Employees' Retirement System ("New Orleans"), hereby certify as follows:

1.   I am fully authorized to enter into and execute this Certification on behalf of New Orleans.  I have reviewed a complaint alleging violations of the federal securities laws prepared against NovaGold Resources, Inc. ("NovaGold");

2.   New Orleans did not purchase NovaGold at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.   New Orleans is willing to serve as a lead plaintiff in this matter, including providing testimony at deposition and trial, if necessary;

4.   New Orleans' transactions in NovaGold during the class period are reflected in Exhibit A, attached hereto;

5.   New Orleans has sought to serve as a lead plaintiff in the following class actions under the federal securities laws during the last three years, but either withdrew its motion for lead plaintiff or was not appointed as lead plaintiff;

*Chicago Bridge & Iron Securities Litigation,* No. 1:06-cv-01283-JES (S.D.N.Y.)

*In re Teletech Litigation,* No. 1:08-cv-00913-LTS (S.D.N.Y.)

6.   New Orleans is currently serving as lead plaintiff in the *In re Celestica Inc. Securities Litigation,* No. 1:07-cv-00312-GBD (S.D.N.Y.) which was brought in 2006.  New Orleans also serves as lead plaintiff in *In re Omnicom Group Inc. Securities Litigation,* No. 1:02-cv-04483-WHP-MHD (S.D.N.Y.), but which was brought in 2002.

7.   Beyond its pro rata share of any recovery, New Orleans will not accept payment for serving as a lead plaintiff on behalf of the class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct this 25

day of September, 2008.

Jerome Davis, Chairman
*New Orleans Employees' Retirement System*

EXHIBIT A

## TRANSACTIONS IN
## NOVAGOLD RESOURCES, INC.

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/ Proceeds |
|---|---|---|---|---|
| Purchase | 01/25/07 | 2,400.00 | $ 16.37 | ($39,383.28) |
| Purchase | 02/08/07 | 2,300.00 | $ 16.48 | ($37,985.88) |
| Purchase | 04/19/07 | 2,800.00 | $ 16.06 | ($45,016.44) |
| Purchase | 04/19/07 | 3,650.00 | $ 16.25 | ($59,312.50) |
| Purchase | 05/01/07 | 110.00 | $ 13.90 | ($1,530.98) |
| Purchase | 05/01/07 | 190.00 | $ 13.88 | ($2,641.55) |
| Purchase | 05/08/07 | 2,050.00 | $ 14.84 | ($30,455.83) |
| Purchase | 05/10/07 | 900.00 | $ 13.89 | ($12,514.50) |
| Purchase | 09/04/07 | 2,400.00 | $ 14.39 | ($34,591.92) |
| Sale | 10/11/07 | -4,100.00 | $ 18.80 | $76,914.82 |
| Sale | 11/01/07 | -1,300.00 | $ 19.14 | $24,857.69 |
| Sale | 11/02/07 | -800.00 | $ 19.37 | $15,476.48 |
| Sale | 11/02/07 | -100.00 | $ 19.15 | $1,913.49 |